# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

TRACY ANN SENECA,

                         **Plaintiff,**

v.
                                                         **18-CV-345**

COMMISSIONER OF SOCIAL SECURITY,

                         **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 19. Tracy Ann Seneca ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security Income ("SSI") benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 13, 17.

## BACKGROUND

On February 10, 2014, Plaintiff protectively filed for SSI, alleging that she became disabled on December 29, 1998. Tr. at 19, 158-63.[1] Plaintiff's application was denied at the initial level and she requested review. Tr. at 95-102. On November 8, 2016,

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

Plaintiff appeared with her attorney for a hearing before Administrative Law Judge Melissa Lin Jones ("the ALJ") and testified, along with an impartial vocational expert ("VE"). Tr. at 32-75. At that time, she amended her alleged onset date to February 10, 2013. Tr. at 36. Following a *de novo* review, the ALJ issued a decision on February 6, 2017, in which she found that Plaintiff was not disabled and therefore not eligible for SSI. Tr. at 16-31. The Appeals Council denied Plaintiff's request for review making the ALJ's determination the final decision of the Commissioner. Tr. at 1-7. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

2

Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial

evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

ALJ Jones analyzed Plaintiff's claims using the familiar five-step process described above.  *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not

4

engaged in substantial gainful activity since February 10, 2014, her application date. Tr. at 21. At step two, she found that Plaintiff had the following severe impairments: arthritis of the hands bilaterally, degenerative disc disease of the lumbar spine, and panic disorder related in part to substance abuse. Tr. at 21. The ALJ also noted that Plaintiff had a history of opioid and alcohol dependence and a diagnosis of bipolar disorder, but concluded that these impairments were non-severe. Tr. at 21. At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings. Tr. at 21-23.

Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. 416.967(b), except that she can perform unskilled work that requires only frequent handling, fingering, feeling or reaching overhead bilaterally and occasional interaction with supervisors, coworkers, or the public. Tr. at 23-24. Continuing to the fourth step, the ALJ found that Plaintiff is not able to perform her past relevant work. Tr. at 24-25. At step five, the ALJ considered Plaintiff's status as an individual approaching advanced age[2] with a high school education, past work experience as a nurse's aide and EKG technician, and the aforementioned RFC, and relied on the VE's testimony to conclude that Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. at 25. Specifically, the VE opined that Plaintiff could work as an office clerk, administrative support, or order filler. Tr. at 26. Accordingly, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act since February 10, 2014, the date the application was filed. Tr. at 26.

---

[2] Plaintiff was 49 years old, which is defined as a "younger individual," when she filed her application on February 10, 2014, but she shifted into the age category "approaching advanced age" by the time of the ALJ's decision, February 6, 2017. Tr. at 25.

5

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 13, 17. Plaintiff contends that the ALJ's decision was not supported by substantial evidence because: (1) there are no medical opinions in the record that sufficiently quantified Plaintiff's physical or mental impairments (Dkt. No. 13-1, pp. 20-23); (2) the ALJ failed to develop the record, as was her duty; (3) the ALJ "cherry-picked' evidence to support her conclusion that Plaintiff was not disabled, while ignoring all the evidence that Plaintiff had greater limitations (Dkt. No. 13-1, pp. 25-28); and (4) the ALJ failed to consider that Plaintiff used a cane to walk (Dkt. No. 13-1, pp. 28-30). The Commissioner counters that: (1) an ALJ can determine a claimant's RFC without a medical opinion where, as here, the record contains sufficient medical evidence (Dkt. No. 17-1, pp. 12-15); (2) the ALJ adequately developed the record (Dkt. No. 17-1, pp. 19-20); (3) the ALJ properly considered the record in its entirety (Dkt. No. 17-1, pp. 21-27); and (4) the ALJ did not err in not accounting for Plaintiff's use of a cane, as Plaintiff failed to demonstrate that she needed one to walk, as was her burden (Dkt. No. 17-1, pp. 27-30). For the reasons that follow, this Court grants Plaintiff's motion for judgment on the pleadings insofar as it seeks remand, and denies the Commissioner's motion for judgment on the pleadings.

**Absence of Any Medical Opinions**

The record in this case does not contain any opinions from a medical source about Plaintiff's physical and mental limitations. On this, the parties appear to agree. Dkt. No. 13-1, pp. 18-20; Dkt. No. 112-15. It is well established that "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result[,] an ALJ's

6

determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* 2010 WL 4703599, *11 (W.D.N.Y.) (internal quotation omitted), *report and recommendation adopted,* 2010 WL 4703591 (W.D.N.Y. 2010). While the determination of a claimant's RFC is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

Under a narrow exception, where the medical evidence reveals a relatively minor impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue,* 2013 WL 422058, at *4 (W.D.N.Y. 2013) (internal quotation omitted). I find that it is not the case that Plaintiff had only minor physical or mental impairments, such that the ALJ could permissibly "make the connection" herself between the bare medical findings and the RFC. To the contrary, the record contains evidence that Plaintiff suffered from back pain, depression, anxiety, and alcohol/substance abuse during the relevant time period, and that these conditions were potentially disabling.

For example, in June 2013, Plaintiff treated with Dr. Pratibha Bansal at Pain Rehabilitation of WNY, who noted that Plaintiff had an "extensive amount of myofascial pain in the lumbar paravertebral, gluteal, piriformis and iliotibial fascia." Tr at 695-98. Dr. Bansal reported that Plaintiff had lumbosacral spine tenderness on palpitation

7

and muscle spasm, positive straight-leg raise test, and tenderness over her L5-S2 facet joints and spine. Tr at 695-98. Plaintiff, who walked with a cane at the time, reported constant pain that was aggravated by walking and bending and which radiated down her legs causing numbness and muscle weakness. Tr. at 695-98.

The record suggests that Plaintiff's back condition was chronic. Dr. Bansal noted that Plaintiff exhibited continued pain and tenderness in her spine, as well as left leg numbness and weakness on November 26, 2013, and December 9, 2013. Tr. at 689-91, 686-88. On November 22, 2015, Plaintiff presented at the Buffalo General Emergency Room with lumbar pain. Tr. at 940. An MRI revealed severe spinal stenosis, disc herniation, and myelopathy. Tr. at 941. Dr. Tobias Mattei, a neurologist, recommended spinal decompression and fusion surgery on November 30, 2015, after noting severe spinal stenosis on Plaintiff's MRI, positive straight-leg raise test with radiation down the left foot, and pain on palpation of the lower back with peripheral tender points. Tr. at 946-47. Plaintiff agreed to the surgery, which was performed on December 23, 2015. Tr. at 959, 969. After some improvement in her leg and back pain, Plaintiff returned to Dr. Mattei on January 26, 2016. Tr. at 995-96. Plaintiff (who was again walking with a cane) reported a burning, aching pain in her left lumbar paraspinal region, and Dr. Mattei noted significant tenderness to palpation over the left lumbar paraspinal and sacral region. Tr. at 995-96. Approximately two months later, on March 12, 2016, Plaintiff presented at the Buffalo General Emergency Room with increased back pain after falling. Tr. at 1036-37. The following day, Dr. Mattei noted that Plaintiff has significant tenderness to palpation and that Patrick's, Gaenslen's, compression and distraction tests were all positive to the left, consistent with residual left L5 radiculopathy. Tr. at 1011-12.

Plaintiff's mental health issues appear to be potentially debilitating as well. Prior to her alleged onset date, Plaintiff abused alcohol, opiates and other drugs, resulting in near overdoses and psychiatric hospital admissions on numerous occasions. Tr. at 226, 240, 244, 251, 432, 472, 474, 482. Plaintiff was treated at Lakeshore Behavioral Health from January 6, 2013 to August 19, 2013, leading into the alleged period of disability, for bipolar disorder, panic disorder, and opiate dependence. Tr. at 670. She reported depression that began at age seven, and panic attacks at night and in public. Tr. at 677. Plaintiff began treatment at Spectrum Human Services on November 25, 2014, reporting severe symptoms of anxiety, depression, mania, hyperactivity, racing thoughts, and irritability. Tr. at 725. Jarod Wabick, LMHC-P of Spectrum noted that Plaintiff was dependent on opiates, cocaine, and crack. Tr. at 738-39. In a January 30, 2015 chemical dependence assessment, Plaintiff reported that she had thoughts of not wanting to live from the time she was seven, and that she used drugs to cope with her problems. Tr. at 773.

Although there are many treatment notes in the record, they generally consist of bare medical findings (and subjective complaints) and do not address how Plaintiff's impairments affect her physical or mental ability to perform work-related functions. Despite the lack of any opinion from a medical source, the ALJ determined that Plaintiff retained the physical RFC to perform light work with some limitations on handling, fingering, feeling, and reaching overhead bilaterally, and interacting with supervisors, coworkers, or the public. Tr. at 23. It is entirely unclear how the ALJ arrived at this RFC. Under these circumstances, I find that the ALJ's RFC is not supported by substantial evidence. *See Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) ("[w]hen an ALJ

9

denies benefits, she must build an accurate and logical bridge from the evidence to her conclusion, . . . and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record.") (internal quotations and citations omitted); *House,* 2013 WL 422058 at *4 ("[b]ecause there is no medical source opinion supporting the ALJ's finding that [plaintiff] can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate."); *Lawton v. Astrue,* 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) ("[t]he record in this [case] contains no assessment from a treating source quantifying plaintiff's physical capabilities, and thus there is no basis upon which the court can find that substantial evidence supports the ALJ's light work RFC determination.").

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *See Gross v. Astrue,* 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014); *Wilson*, 2015 WL 1003933, at *22. Accordingly, this case is remanded to allow the ALJ to obtain an RFC assessment or medical source statement from an acceptable medical source concerning Plaintiff's physical and mental ability to perform work.

Because I find that remand is warranted on this basis, this Court will not address Plaintiff's remaining arguments which raise objections which would likely be remedied by a consultative exam or testimony from a medical expert.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is hereby GRANTED insofar as it seeks remand, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is DENIED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         August  21, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**